```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>FRANZ GOLDING,<br><br>         Defendant. | 05-cr-538 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

At age 20, defendant Franz Golding participated in a murder and other crimes relating to his involvement in a drug-distribution conspiracy. Seventeen years later, Golding moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction in sentence, based primarily on his age at the time of the offense, his post-conviction rehabilitation, and the harsh conditions of confinement during the COVID-19 pandemic. While the seriousness of Golding's crime precludes a sentence reduction to time-served, this Court concludes that Golding has demonstrated extraordinary and compelling circumstances warranting some level of sentence reduction. This Court accordingly reduces Golding's sentence by 10%, or 42 months, leading to a total sentence of 378 months.

I.  **Background**

The Court assumes general familiarity with the facts of this case. See Golding v. United States, No. 05-cr-538, 2014 WL 2959296 (S.D.N.Y. July 2, 2014). As relevant here: Golding was convicted following a jury trial of four counts, including using firearms to

1

commit a murder in furtherance of a conspiracy. Id. at *1.[1] The evidence adduced at trial showed that Golding was a member of a marijuana distribution organization led by his co-defendant, Shawn Peterkin[2], from late 2003 through 2005. Id. After Peterkin was robbed at gunpoint, Golding assisted Peterkin in numerous attempts at retaliation. Id. These included multiple shootouts and, finally, a chase in which Peterkin, Golding, and others fired at and killed their fleeing target in his car. Id.

At the time of the murder, Golding was 20 years old. He was raised largely by his grandmother and uncle in an apparently violent area of Kingston, Jamaica, and came to the United States as a young man with little in the way of social ties or support. Pileggi Decl., Dkt. No. 224-1, at 1-2. It was at that time that he fell in with Peterkin, who helped Golding find a job and place to live. Id.

---

[1] He was also convicted of conspiring to distribute and possess with intent to distribute 100 kilograms or more of marijuana; carrying firearms during a conspiracy; and being an alien in possession of a firearm. Id.

[2] This Court denied a compassionate release motion from Mr. Peterkin last year. United States vs. Peterkin, No. 05-cr-538, 2021 WL 1948513 (S.D.N.Y. May 13, 2021). As the criminal conspiracy's ringleader, Peterkin bore the greatest responsibility for it; he was also significantly older than Golding at the time of the offense. Id. at *1. Peterkin's motion was based largely on non-extraordinary health factors that placed him at somewhat increased risk from COVID-19, and his evidence of rehabilitation was contradicted by recent disciplinary reports, including for assault. Id. at *2. The Court's decision in that case is therefore of little relevance here.

II.  **Legal Standard**

The First Step Act empowers district courts to modify a defendant's term of imprisonment after the defendant exhausts administrative remedies when there are "extraordinary and compelling reasons warrant[ing] such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute also requires courts to consider whether "the 18 U.S.C. § 3553(a) sentencing factors [are] consistent with a lesser sentence than that previously imposed," and, if so, whether there is "a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020) (quotations omitted).

District courts may exercise "broad" discretion in determining which circumstances qualify as "extraordinary and compelling," as well as in determining what degree of sentence reduction (if any) is appropriate. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). Though a defendant's "rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t) (emphasis added), rehabilitation may, with other factors, contribute to a finding that such circumstances exist. Brooker, 976 F.3d at 238. This Court has previously found such reasons based in whole or in part on "an offender's youth, combined with society's evolving understanding of the adolescent brain," United States v. Ramsay, 538 F. Supp. 3d 407, 410 (S.D.N.Y. 2021), a defendant's "extraordinary rehabilitation,"

3

United States v. Quinones, No. 00-cr-761, 2021 WL 797835, at *3 (S.D.N.Y. Feb. 27, 2021), and the "far harsher than normal" conditions of confinement during the COVID-19 pandemic, United States v. Rodriguez, 492 F. Supp. 3d. 306, 311 (S.D.N.Y. 2020).[3]

### III. Analysis

All parties agree that Golding has exhausted administrative remedies. See Def. Br. Supp. Mot. ("Def. Br."), Dkt. 224 at 10; Gov't Br. Opp. Mot. ("Gov't Br."), Dkt. 227 at 6 n.1. The outcome of his motion therefore turns on whether there are extraordinary and compelling reasons to merit a reduced sentence in accordance with the factors set forth in section 3553(a).

#### A. Extraordinary and Compelling Reasons

The Court finds that Golding has adequately demonstrated extraordinary and compelling reasons that justify some level of sentence reduction, based collectively on three factors.

*1. Golding's age at the time of the offense*

First, and most important, Golding's young age at the time of the offense weighs strongly in favor of a finding of extraordinary and compelling reasons. The Supreme Court has repeatedly emphasized that "youth matters in sentencing." See Jones v. Mississippi, 141 S. Ct. 1307, 1314 (2021). See also Miller v. Alabama, 567 U.S. 460, 472 (2012) ("[T]he distinctive attributes of youth diminish the penological

---

[3] Such conditions are "insufficient on [their] own" to constitute extraordinary and compelling circumstances, but may contribute to such circumstances in conjunction with other factors. Id.

4

justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes."). These cases draw on recent developments in neuroscience, psychology, and sociology, which demonstrate why standard penological goals apply with much less force to younger defendants in light of their immaturity, susceptibility to peer and other influences, salvageability, and dependence on family and other features of their environment that lie beyond their control. See Montgomery v. Louisiana, 577 U.S. 190, 208-210 (2016). This Court recently explained how these distinctive features of youth and our increased understanding of their role in younger offenders' crimes may create extraordinary and compelling circumstances warranting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Ramsay, 538 F. Supp. 3d at 417-23.

Golding was 20 years old when he and others committed a very serious drug-related murder. Although slightly older than the 18-year old defendant in Ramsay, Golding was still influenced by the various relevant features of youth that Ramsay identified. Id. at 423 ("[C]ourts cannot simply treat anyone over 18 as an 'adult' for sentencing purposes but must inquire whether the human being they are about to sentence is still in many respects an adolescent."). See also U.S. v. Rengifo, 569 F. Supp. 3d 180, 194 (S.D.N.Y. 2021) (considering youth in sentencing for a defendant who was 23 years old at the time of his offense).

For instance, Golding's immaturity at 20 made him more likely to make mistakes in "high-pressure, time-sensitive, emotional contexts,"

such as the fast-paced and violent car chase that led to his conviction in this case. Ramsay, 538 F. Supp. 3d at 417-20 (discussing the role of immaturity and "hot cognition" in actions by adolescents and young adults). At 20, Golding was also highly susceptible to the influence of his older peer, Shawn Peterkin, who, as described above, helped place Golding in jobs and shelter soon after he arrived in this country. Pileggi Decl., Dkt. No. 224-1 at 1-2; Ramsay, 538 F. Supp. 3d at 420-22 (explaining the greater susceptibility of younger defendants to malign peer influences). Golding's dependence on Peterkin was likely heightened by the circumstances of his childhood, which included long periods without either parent, and of coming to the United States without an extensive familial or other support network. Pileggi Decl., Dkt. No. 224-1 at 1-2, Ramsay, 538 F. Supp. 3d at 422-23 (explaining how young defendants' dependence on others and lack of control over their environment may reduce their culpability). Finally, the evidence Golding presents of his rehabilitation demonstrates an essential premise on which Ramsay and the cases cited in it relied: young offenders' worst actions do not necessarily demonstrate incorrigibility or predict their continuing misconduct. 538 F. Supp. 3d at 422 (discussing young offenders' salvageability).

The Government argues that Golding's youth should not count for very much today, since this Court already considered it at Golding's 2008 sentencing. Gov't Opp. at 7. However, the Court at the time lacked the benefit of the recent scholarship relating to adolescent brain

development canvassed in Ramsay, 538 F. Supp. 3d at 417, as well as the Supreme Court's most recent cases relating to youth in sentencing, see, e.g., Montgomery, 577 U.S. at 206-13. It is also worth noting that the Sentencing Commission has explicitly stated in a policy statement that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction." U.S. Sent'g Guidelines Manual §1B1.13 (U.S. Sent'g Comm'n 2021).[4]

Moreover, though one important reason why youth matters in sentencing is that the character of younger defendants is generally still evolving, Ramsay, 538 F. Supp. 3d at 422, this Court, at the time Golding was sentenced, could only guess at Golding's future behavior. Today, this Court has a seventeen-year record that allows it to assess, to some degree, Golding's rehabilitation. As explained below, that record reinforces the conclusion that Golding's age at the time of conviction weighs in favor of a sentence reduction.

---

[4] The Second Circuit held in Brooker that this particular section of the Guidelines failed to take into account the changes brought about by the First Step Act and was therefore not "applicable" to defendants seeking a sentence reduction directly rather than upon the motion of the Bureau of Prisons. 976 F.3d at 235. However, it does not therefore follow that the expectation existing before the First Step Act--that extraordinary and compelling circumstances might warrant a sentence reduction even when they were foreseeable or foreseen at the time of sentencing--no longer applies.

*2. Golding's record of rehabilitation*

Though "rehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t) (emphasis added), rehabilitation may, with other factors, contribute to a finding that such reasons exist. Brooker, 976 F.3d at 311; see Rodriguez, 492 F. Supp. 3d at 311 (finding that a defendant's rehabilitation "can 'interact with the present coronavirus pandemic' to create an extraordinary and compelling reason for a sentence reduction" (quotations omitted)).

Golding presents reasonably strong evidence of rehabilitation. He has had no disciplinary infractions in a decade other than his possession of an MP3 player and accessories, which he was apparently authorized to possess for some period of time but which he held onto for a period longer than permitted. Gov't Opp. 21. Golding has maintained steady employment throughout his incarceration and has actively pursued educational opportunities. Def. Br. 4-5. He has also developed a strong passion for and talent in art. Id. 5-6, Ex. E. Golding further provides multiple letters attesting to his character, including from a work supervisor in prison, a former art instructor, and several members of his family. Id. Exs. B, C, D, F. Of particular note is correspondence between Golding and his niece since at least 2011, which reveals an evolving and matured appreciation for the harm Golding's actions have caused. Id. Ex. D.

The Government responds that Golding's submissions do not sufficiently demonstrate "extraordinary rehabilitation" because they

8

lack the volume or quality of letters found in other compassionate release motions granted by this Court. See, e.g., Quinones, 2021 WL 797835, at *3 (finding strong evidence of rehabilitation based largely on a "particularly powerful" letter from a prison warden); Rodriguez, 492 F. Supp. 3d at 309 (granting a reduced sentence for a defendant with 27 letters of support from prison officials). But rehabilitation may take place along a spectrum, and the Court rejects the suggestion that rehabilitation only counts for those defendants whose motions are supported in full by senior prison officials or who are otherwise positioned to make some truly exceptional showing. Golding's evidence demonstrates that he has stayed out of trouble, maintained a continuous and solid work history, invested in his learning, and maintained familial relationships, all facts that tend to demonstrate rehabilitation.[5]

---

[5] The Government also raises some serious but exceptionally vague allegations (the details of which are sealed) that Golding recently intended to do harm to a witness who testified against him at trial. Gov't Opp. at 3-4. These allegations, which Golding vigorously disputes, are based on several layers of hearsay and come from a clearly unreliable witness with whom the Government is no longer in contact and who was unable to name Golding until prompted by the Government. Id. The Government itself appears to set little store by these allegations, as it has failed to take even simple steps to corroborate them and declined, at oral argument, to provide any further details or even to argue that the Court should put *any weight* on them. In its brief, the Government acknowledges Golding's "commendable" progress toward rehabilitation, id. at 8, casting further doubt on whether it takes seriously the allegations it raises. In any event, absent some more particular evidence (or information about how the Government intends to obtain such evidence), this Court declines to base its holding on unsubstantiated insinuation.

*3. Harsh Conditions of Confinement During the Pandemic*

Finally, Golding argues that the harsh conditions of his imprisonment at FCI Fort Dix during the COVID pandemic amount to an extraordinary and compelling reason to modify his sentence. Def. Br. at 14-16. In prior cases, this Court has found that these conditions, which included extended periods without visitation and with severely restricted freedom of movement within prison, may render the conditions of confinement "far harsher and more punitive than the Court had anticipated at sentencing." Rodriguez, 492 F. Supp. 3d at 311; see also United States v. Robles, 553 F. Supp. 3d 172, 184 (S.D.N.Y. 2021) (granting a reduced sentence because FCI Fort Dix's harsh conditions of imprisonment during the COVID-19 pandemic were "far more punishing than intended"). Although Golding has not exhibited any medical condition that heightens his risk of serious illness from COVID-19, his limited access to visitors, programming, and recreational activities during the pandemic years have rendered his recent confinement harsher than anticipated. See Robles, 553 F. Supp. 3d at 184. While this fact might not on its own support a finding of extraordinary and compelling circumstances, it combines with Golding's youth at the time of the offense and his evidence of rehabilitation to further support the Court's finding.

B. **The Section 3553(a) Sentencing Factors**

After finding that extraordinary and compelling reasons exist, the Court must also consider whether a reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).[6]

By any standard, Golding's offense was egregious. Not only did Golding participate in a drive-by shooting that caused the victim's death, but he also recklessly exposed innocent bystanders to harm by shooting out of a moving vehicle during the associated car chase. Given these facts, a reduction of sentence to time served (as requested by the defense) would be inconsistent with the § 3553(a) sentencing factors. In fact, as noted by the Government, this Court stated at Golding's sentencing that any sentence under 30 years would not adequately reflect the need for specific and general deterrence or just punishment. Gov't Opp. at 11; Sent. Tr. at 15.

Nevertheless, in light of the above analysis regarding Golding's youth, his evidence of rehabilitation, and the unexpectedly harsh nature of confinement during the pandemic, a 35-year sentence is not necessary to promote the goals of sentencing. As such, this Court concludes that a sentence reduction of 10%--or 42 months--is warranted.

---

[6] These factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

11

## IV. Conclusion

The Court finds extraordinary and compelling reasons that warrant a sentence reduction based on Golding's age at the time of the offense, evidence of his post-conviction rehabilitation, and the unexpectedly harsh conditions of imprisonment during the COVID-19 pandemic. The Court also finds that, despite the seriousness of Golding's offense, a 10% sentence reduction is appropriate in light of the factors set forth in Section 3553(a). Golding's motion for compassionate release is therefore granted in part, and his sentence is ordered reduced by 42 months, that is, to a sentence of 378 months.

SO ORDERED.

New York, NY  
July 27, 2022

_____  
JED S. RAKOFF, U.S.D.J.